IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THOMAS P. VITRANO,

    Petitioner,

v.                                                      Civil Action No. 1:15cv220
                                                    (Judge Keeley)

JENNIFER SAAD, Warden,

    Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On December 21, 2015, the *pro se* petitioner, Thomas P. Vitrano ("petitioner"), an inmate at FCI Hazelton, filed a Habeas Corpus Petition pursuant to 28 U.S.C. § 2241 challenging the computation of his federal sentence. Along with his petition, Vitrano filed an Emergency Motion requesting an expedited fast track court order compelling the Warden to release him immediately. Petitioner had already paid his filing fee when he filed this case.

On December 2, 2015, Vitrano filed a Motion for Bail in Light of this Case/Motion to Supplement under Fed.R.Civ.P. R. 15 . . . with Newly Discovered Evidence. Vitrano filed an Exhibit K (Judgment in a Criminal Case) on December 11, 2015.

On January 6, 2016, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, an Order to Show Cause was issued against the Respondent. On January 11, 2016, Petitioner filed a Supplemental Appendix of Exhibits V, W, X and Y in support of his petition. On January 14, 2016, Vitrano filed a Proactive Motion to Deny or Prohibit the Respondent or Respondent's Representative any Extension of Time. By Order entered February 2, 2016, Vitrano's Proactive Motion was denied.

On February 3, 2016, the respondent filed a Motion to Dismiss or, in the Alternative, for Summary Judgment and Response to Order to Show Cause. Because Vitrano was proceeding *pro se,* on February 2, 2016, the court issued a Roseboro Notice. On February 10, 2016, Vitrano moved for an extension of time in which to respond to the Warden's dispositive motion. By Order entered February 16, 2016, the extension was granted. Vitrano filed his Response in Opposition on February 18, 2016, along with a Motion for Request for an Evidentiary Hearing in Light of Disputed Facts.

## II. Facts[1]

On October 6, 2001, in the Eastern District of Wisconsin, petitioner, a convicted felon, possessed a firearm. ECF No. 13-1 at 2. He was charged in a criminal complaint with being a felon in possession of ammunition on August 30, 2002, in the Eastern District of Wisconsin in Case No. 2:02cr199-1. ECF No. 13-1 at 2. He was arrested by the U.S. Marshals that day and has been incarcerated ever since. ECF No. 13-1 at 15. A one-count indictment was filed on September 10, 2002.

On October 10, 2002, a four-count Superseding Indictment was filed, charging petitioner in Count One with being a convicted felon in possession of ammunition; Count Two: being in possession of ammunition while subject to a Domestic Abuse Injunction; Count Three, being a convicted felon in possession of a Remington 870 pump shotgun; and Count Four, being in possession of a Remington 870 pump shotgun while subject to a domestic abuse injunction. On August 8, 2008, he pled guilty to Counts Three and Four of the Superseding Indictment. On November 7, 2003, he was sentenced to a 150-month term of confinement, consisting of 120-

---

[1] The details of Petitioner's underlying criminal cases can be found on PACER at E.D. Wis. Case No. 2:02cr199-1 and 2:09cr140-1.

months as to Count Three and 30-months as to Count Four, to run consecutively, for a total term of 150-months imprisonment. ECF No. 13-1 at 22.

Pursuant to Vitrano's Motion to Correct Sentence, on November 14, 2003, the U.S. District Court concluded that Counts Three and Four must be merged for purposes of sentencing and amended the Judgment in Case No. 2:02cr199-1, ordering Counts Three and Four to run concurrently, for a total term of 120-months imprisonment. ECF No. 13-1 at 31.

In accordance with Program Statement 5880.28, Sentence Computation Manual (CCCA-1984), and 18 U.S.C. §3585(a), the Bureau of Prisons Bureau) prepared a sentence computation for Vitrano, commencing his 120-month federal sentence on November 7, 2003, the date the sentence was imposed. Pursuant to the statutory provisions of 18 U.S.C. 3585(b), prior custody credit from August 30, 2002, through November 6, 2003, was applied toward his sentence. ECF No. 13-1 at 37. He was projected to earn 470 days of Good Conduct Time, generating a Good Conduct Time release date of May 17, 2011. ECF No. 13-1 at 37.

Because Vitrano had been charged with unlawful possession of a firearm, 18 U.S.C. § 922(g)(1) under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), in determining his ACCA predicates, 18 U.S.C. § 921(a)(20) provides that any conviction for which the defendant has had civil rights restored does not count, unless the restoration expressly provided that the defendant may not possess firearms. The parties disputed whether Vitrano's civil rights had been restored in one of his putative ACCA predicates, a 1977 recklessly endangering safety conviction. Vitrano could not locate a copy of his "discharge certificate" from the 1977 case, so the parties obtained five sample discharge orders from the Wisconsin Historical Society. The Court concluded that any of the sample orders would have sufficed to effect a restoration. However, on the government's appeal, the Seventh Circuit held that only one of the five would

3

have restored petitioner's civil rights and thus he needed an express firearms reservation. Because Vitrano could not establish by a preponderance of the evidence that he had received that type of order (rather than one of the other four types), the 1977 conviction counted. United States v. Vitrano, 405 F.3d 506 (7th Cir. 2005). On June 23, 2005, the 7th Circuit Court of Appeals reversed and remanded Vitrano for resentencing as an Armed Career Criminal. See E.D. Wis. ECF No. 60, 2:02cr199-1; see also E.D. Wis. ECF No. 76 at 2, 2:02cr199-1.

The government filed a motion for upward departure at resentencing and petitioner opposed. On February 1, 2006, after witness testimony and argument, [United States v. Vitrano, 495 F.3d 387, 388, 2007 U.S. App. LEXIS 17134, *1 (7th Cir. Wis. 2007)] petitioner was resentenced under the ACCA. See E.D. Wis. ECF No. 76 at 4, 2:02cr199-1. The E.D. Wis. Sentencing court issued an Amended Judgment the same day, ordering a term of 360 months as to Counts Three and Four, to run concurrently to each other for a total term of imprisonment of 360 months. ECF No. 13-1 at 40.

Petitioner appealed. On August 13, 2007, the 7th Circuit Court of Appeals affirmed. See E.D. Wis. ECF No. 94, 2:02cr199-1.

In March of 2008, Vitrano filed a motion under 28 U.S.C. § 2255 attacking the ACCA sentence, asserting that a friend had located a discharge certificate containing the restoration language required by the Seventh Circuit. The certificate was ultimately determined to be a fake. Accordingly, the government obtained an indictment in Case No. 09-CR-140 charging Vitrano with making a false declaration to a court in violation of 18 U.S.C. § 1623(a); attempting to corruptly influence a court proceeding, in violation of 18 U.S.C. § 1512(c)(2); and threatening a witness, in violation of 18 U.S.C. § 1512(b)(1). At trial, Vitrano was convicted on all three counts, and on August 26, 2013, was sentenced him to 120 months in prison, with 72 months to

run concurrently and 48 months consecutively to the sentence in Case No. 2:02cr199-1. On appeal, the Seventh Circuit affirmed. United States v. Vitrano, 747 F.3d 922 (7th Cir. 2014). Vitrano's later § 2255 motion attacking his convictions and sentence in Case No. 2:09cr140-1 was denied. See Vitrano v. United States, No. 15-C-292, 2015 U.S. Dist. LEXIS 37609 (E.D. Wis. Mar. 25, 2015).

In accordance with Program Statement 5880.28, Sentence Computation Manual (CCCA-1984), and 18 U.S.C. §3584(1)(a), Multiple Sentences of Imprisonment, the Bureau of Prisons updated petitioner's sentence computation and aggregated the Petitioner's sentence. The 72 month concurrent portion was absorbed in the remainder of the 360-month sentence, and added the 48 months to the 360 months as required by the Judgment. The commencement date and prior custody credit remained the same; however, the term was now 408 months. He was projected to earn 1,516 days of Good Conduct Time, generating a Good Conduct Time release date of July 5, 2032. ECF No. 13-1 at 60.

On June 26, 2015, the Supreme Court struck down part of the ACCA as unconstitutionally vague in Johnson v. United States, 135 S. Ct. 2551 (2015). Subsequently, the Seventh Circuit Court of Appeals determined that Johnson announced a new substantive rule that applied retroactively to cases on collateral review. See Price v. United States, 795 F.3d 731 (7th Cir. 2015). Accordingly, Vitrano filed an application with the Seventh Circuit to file a second or successive § 2255 motion. On September 29, 2015, the Seventh Circuit granted Vitrano's motion, permitting him to file a second or successive § 2255 motion attacking his ACCA sentence under Johnson. See Vitrano v. United States, (7th Cir. ECF No. 3)(15-2842).

On October 28, 2015, the Eastern District of Wisconsin granted Vitrano's motion, vacated the 30-year ACCA sentence, and resentenced him to 120 months. See United States v. Vitrano, (E.D. Wis. ECF No. 102)(2:02cr199-1).

In accordance with Program Statement 5880.28, Sentence Computation Manual (CCCA-1984), the Bureau of Prisons updated Petitioner's sentence computation, commencing his 120-month sentence on November 7, 2003, the date it was imposed. Pursuant to the statutory provisions of 18 U.S.C. § 3585(b), prior custody credit from August 30, 2002 through November 6, 2003 was applied toward his sentence. However, petitioner had disciplinary actions that resulted in the loss of 95 days of Good Conduct Time, generating a GCT release date of August 11, 2011. Accordingly, Petitioner's sentence in Case No. 2:02cr199-1 was considered served as of August 11, 2011, even though he spent more time in incarceration. ECF No. 13-1 at 67.

The Bureau was required to deaggregate the sentence in Case No. 2:09cr140-1 from the already-satisfied sentence in Case No. 2:02cr199-1, because a sentence cannot run concurrently with one that has been completed. Accordingly, petitioner's 120-month sentence was recalculated to commence on August 26, 2013, its date of imposition. Petitioner was credited from August 12, 2011 through August 25, 2013 for the time he spent incarcerated after his release date from his satisfied sentence in Case No. 2:02cr199-1. He is projected to earn 470 days of Good Conduct Time, generating a Good Conduct Time release date of April 27, 2020. ECF No. 13-1 at 70.

### III. Contentions of the Parties

#### A. Petitioner's § 2241 Motion

Petitioner claims that the BOP is not following the judgment in E.D. Wis. Case No. 2:09cr140-1, directing that that sentence should run partially concurrent and partially consecutive

to the sentence in Case No. 2:02cr199-1. He maintains that 78 months of his 120-month sentence in Case No. 2:09cr140 should have been run concurrently to the sentence in Case No. 2:02cr199-1, resulting in his immediate release from custody. Instead, he contends that the BOP's calculation erroneously runs the sentence in Case No. 2:09-cr140-1 totally consecutive to that in Case No. 2:02cr199-1. He further asserts that there is an error in his previous and post-resentencing computation data sheets; the one for Case No. 2:02cr199 shows the 72 months concurrent and 48 months consecutive, but the computation data sheet for Case No. 2:09cr140 shows the sentence as being completely consecutive.

Regarding the exhaustion of his administrative remedies, petitioner contends he filed a BP-9 which was still pending as of the date he filed his petition. ECF No. 1 at 7 – 8.

As relief, he seeks to have the record corrected and to be immediately released from his unlawful imprisonment. ECF No. 1 at 8.

### B. Respondent's Motion

Respondent contends it is entitled to summary judgment or dismissal of this matter, arguing that:

1) petitioner's federal sentence in Case No. 2:09cr140-1 did not commence until August 26, 2013, and therefore, it cannot be run concurrent with his sentence in Case No. 2:02cr199-1, which had already been satisfied.

2) Petitioner has received all the jail credit to which he is entitled.

3) Petitioner is precluded from pursuing relief because he has failed to exhaust his administrative remedies.

### C. Petitioner's Response

In his response, petitioner reiterates his arguments and attempts to refute the respondent's on the same.

### IV. Standard of Review

7

A responsive pleading captioned as a motion to dismiss or, in the alternative, as a motion for summary judgment puts all parties on notice that a court could construe the motion either way. Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 260 (4th Cir. 1998). Federal Rule of Civil Procedure 12 states that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, the Court may consider documents attached to the complaint, as well as those attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the

"rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); see also Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

## V. Analysis

**Failure to Exhaust**

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9),within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the Warden's response, he may appeal to the regional director of the Federal Bureau of Prisons (BP-10) within 20 calendar days of the Warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the office of the General Counsel (BP-11) within 30 calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D. Md. 1997).

Here, petitioner admits that at the time he filed his §2241 petition on November 25, 2015, he had only recently filed a BP-9 which was still pending. ECF No. 1 at 7 – 8. Respondent asserts that petitioner filed, but did not exhaust his administrative remedies regarding his sentence computation and never fully exhausted. Out of the 100 administrative remedies petitioner filed since his BOP incarceration in July, 2004, only 3 challenged his sentence computation. ECF No. 13-2, ¶¶ 5 - 7 at 3; see also ECF No. 13-2 at 7, 22 – 23. His BP-9 on the issue, Remedy ID No. 842307-F1, was filed on November 16, 2015, four days before he signed his § 2241 petition. Although petitioner signed his petition on November 20, 2015, the certificate of service is dated November 13, 2015. See ECF No. 1 at 9 and 10; see also ECF No. 13-2 at 22. It was denied on November 23, 2015. ECF No. 13-2 at 22. Petitioner appealed the denial on December 3, 2015, by filing Remedy ID No. 842307-R1 at the Regional Office level. Id. It was denied on December 28, 2015. Id. Petitioner then attempted to appeal the Regional Office denial by filing Remedy ID No. 842307-A1 at the Central Office level on January 11, 2016. Id. at 23. However, it was rejected on January 19, 2016 because petitioner had exceeded the allowable continuation page limit. Id. Petitioner was instructed to resubmit his submission in proper form within 15 days of the rejection. ECF No. 13-2, § 7 at 3.

Petitioner's response to the respondent's dispositive motion on the point is that his administrative remedy requests are "irrelevant to this instant issue[.]" ECF No. 21 at 1. He also contends that he did in fact exhaust his administrative remedies, but that the respondent failed to adequately and timely respond to them. Id. at 2. Elsewhere, he contends that he did in fact exhaust, but the respondent "intentionally failed to answer them, designed as "Unlawful Tactical Advantage" to deny Vitrano access to this Court." Id. at 4. Further, he alleges that the respondent failed to answer his administrative remedies within 15 calendar days by continuously filing

11

rejection notices and sending his remedy requests back to him saying that he was 2 cents short on postage, again, as an "unlawful tactical advantage" to deny him access to the court. Id. at 5. Finally, petitioner contends that he did in fact file all of his required administrative remedies, including the final one, which he asserts was "resubmitted correcting the discrepancy." ECF No. 21-1 at 2 and 3. He argues that the respondent's attempt to assert otherwise is an attempt to trick the Court.

Prisoners are required to exhaust their administrative remedies *prior to* the filing of their petitions, citing to McClung v. Shearin, 90 Fed. Appx. 444 (4th Cir. 2004) (Federal prisoners must exhaust their administrative remedies prior to filing §2241 petitions.); United States v. Odiana, 7 F.3d 227 (4th Cir. 1993) (administrative exhaustion required prior to filing §2241); United States. v. Mercado, 37 Fed. Appx. 698 (4th Cir. 2002) (dismissal for failure to exhaust BOP's administrative remedies prior to filing §2241). The requirement of exhaustion in § 2241 petitions is judicially imposed, and therefore courts retain discretion to waive the requirement when exhaustion is futile. See Larue v. Adams, No. 1:04-0396, 2006 WL 1674487 * 8 (S.D. W. Va. June 12, 2006), Reeder v. Phillips, No 1:07-cv-138, 2008 WL 2434003 *3, Keeley, J. (N.D. W.Va. June 12, 2008). However, unless the agency is certain to rule adversely, failure to exhaust is not excused. Reeder, 2008 WL 2434003 at * 3.

Petitioner did not produce a copy of the final administrative remedy request he contends he resubmitted to correct the exceeding of the allowable continuation page limit. Thus, his claim regarding having corrected the final remedy request is unsupported by the record, as is his claim that the remedy requests *at issue* were continuously rejected and sent back to him for reasons of insufficient postage. Moreover, and most significant, even if he did in fact correct the final, over-the-page limit remedy request, it is undisputed in the record that he did not fully exhaust his

administrative remedies *prior to* filing suit as required. See McClung v. Shearin, *supra* at 90 Fed. Appx. 444; United States v. Odiana, *supra* at 7 F.3d 227; and United States. v. Mercado, *supra* at 37 Fed. Appx. 698.

Accordingly, it is apparent from the record that petitioner did not exhaust his administrative remedies regarding his sentence computation prior to filing in court. To the extent that exhaustion may be waived, plaintiff has failed to set forth any reason at all, let alone any accepted reason, to excuse his failure to exhaust. Because plaintiff is now well outside of the time limits for bringing his claims, attempting to finish exhausting now would be futile, thus his claims must be dismissed with prejudice.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 12) be **GRANTED**, and the Petitioner's §2241 petition (ECF No. 1) be **DENIED and dismissed with prejudice**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied,* 467 U.S. 1208 (1984).

Further, the undersigned recommends that Petitioner's pending Emergency Motion requesting an expedited fast track court order compelling the Warden to release him immediately

13

(ECF No. 2); Motion for Bail in Light of this Case/Motion to Supplement under Fed.R.Civ.P. R. 15 . . . with Newly Discovered Evidence (ECF No. 4); and Motion for Request for an Evidentiary Hearing in Light of Disputed Facts (ECF No. 22) all be **DENIED as moot.**

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: June 28, 2016

                                              /s/   James E. Seibert_____
                                              JAMES E. SEIBERT
                                              UNITED STATES MAGISTRATE JUDGE