**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**THOMAS P. VITRANO,**

       **Petitioner,**

                       **Civil Action No. 1:15cv220**
**v.**                          **(Judge Keeley)**

**JENNIFER SAAD, Warden,**

       **Respondent.**

## ORDER ADOPTING REPORT AND RECOMMENDATION

Pending before the Court is the petition for habeas corpus pursuant to 28 U.S.C. § 2241 filed by the pro se petitioner, Thomas P. Vitrano ("Vitrano"). (Dkt. No. 1). Vitrano, who is currently incarcerated at Federal Correctional Institution Hazelton, challenges the calculation of his sentence and seeks immediate release. Id. On June 28, 2016, the Honorable James E. Seibert, United States Magistrate Judge, issued a report and recommendation ("R&R"), which recommended that the Court deny and dismiss Vitrano's petition for failure to exhaust his administrative remedies. (Dkt. No. 25). Vitrano filed his objections to the R&R on July 20, 2016. (Dkt. No. 33).

For the reasons that follow, the Court **ADOPTS** the R&R, **OVERRULES** Vitrano's objections, **GRANTS** the respondent's motion for summary judgment, **DENIES** the § 2241 petition, and **DISMISSES** the case **WITH PREJUDICE.**

### ORDER ADOPTING REPORT AND RECOMMENDATION

### BACKGROUND[1]

On November 7, 2003, the Honorable Rudolph T. Randa, United States District Judge for the Eastern District of Wisconsin, sentenced Vitrano to 120 months of incarceration after he pleaded guilty to being a felon in possession of a firearm and possessing a firearm while subject to a domestic abuse injunction.[2]  At sentencing, the parties disputed whether Vitrano was subject to the Armed Career Criminal Act ("ACCA"). Vitrano alleged that his civil rights had been restored following one of his predicate offenses. Under 18 U.S.C. § 921(a)(20), a prior conviction does not qualify as a predicate offense if the defendant has had his civil rights restored, unless the restoration explicitly forbids firearm possession. Because Vitrano could not provide a copy of his "discharge certificate" from that previous conviction, the parties obtained five sample discharge orders from the Wisconsin Historical Society. After reviewing the samples, Judge Randa concluded that any of them would have sufficed to restore Vitrano's rights and he concluded that Vitrano was not subject to the ACCA.

---

[1]Because the R&R by Magistrate Judge Seibert provides a thorough background of the facts of this case, the Court summarizes them where appropriate.

[2]A record of Vitrano's case in the Eastern District of Wisconsin can be found at No. 2:02cr199-1.

ORDER ADOPTING REPORT AND RECOMMENDATION

As a consequence of that ruling, the Bureau of Prisons ("BOP") prepared a sentence computation for Vitrano, determining that his sentence commenced on November 7, 2003, the date of his sentencing. With credit for time served and his projected good conduct credit, the BOP calculated his tentative release date as May 17, 2011. (Dkt. No. 13-1 at 4).

The government appealed Judge Randa's decision that Vitrano was not subject to the ACCA enhancement to the Seventh Circuit. That Court found that only one of the samples would have restored Vitrano's rights, and thus he needed to establish that he had received the type of discharge certificate that expressly allowed possession of firearms. Because Vitrano could not establish by a preponderance of the evidence that he had received such a discharge, the appeals court held that he was subject to the ACCA and remanded the case to Judge Randa for re-sentencing. See United States v. Vitrano, 405 F.3d 506 (7th Cir. 2005).

At re-sentencing on February 1, 2006, the government moved for an upward departure; after hearing argument and witness testimony, Judge Randa sentenced Vitrano to two concurrent 360 month sentences. Vitrano again appealed, and the Seventh Circuit affirmed his sentence. After considering Vitrano's time served and potential good conduct credits, the BOP projected his release date to be

ORDER ADOPTING REPORT AND RECOMMENDATION

January 9, 2029. (Dkt. No. 13-1 at 4).

In March of 2008, Vitrano filed a petition pursuant to 28 U.S.C. § 2255, claiming that his friend had located his discharge certificate, which contained the requisite language required to restore his right to possess firearms. After that certificate was determined to be a fake, the government indicted Vitrano for (1) making a false declaration to a court, (2) attempting to corruptly influence a court proceeding, and (3) threatening a witness.[3] A jury convicted Vitrano on all three counts.

On August 26, 2013, the Honorable Lynn Adelman, United States District Judge for the Eastern District of Wisconsin, sentenced Vitrano to 120 months of incarceration, and structured the sentence so that 72 months were to run concurrently with, and 48 months were to run consecutively to, his previously imposed federal sentence. The Seventh Circuit affirmed Vitrano's conviction and sentence. His subsequent § 2255 petition also failed on review. Pursuant to BOP Program Statement 5880.28, Sentence Computation Manual (1984), and 18 U.S.C. § 3584(1)(a), the BOP aggregated Vitrano's sentences as follows: 72 months was absorbed into the remainder of his 360 month sentence and the 48 months was added to the end of it, resulting in

---

[3]A record of Vitrano's second case in the Eastern District of Wisconsin can be found at No. 2:09cr140.

a total sentence of 408 months, with a revised projected release date of July 5, 2032. (Dkt. No. 13-1 at 60).

In 2015, the Supreme Court of the United States declared a portion of the ACCA to be unconstitutionally vague. See Johnson v. United States, 135 S. Ct. 2551 (2015). The Seventh Circuit subsequently determined that Johnson applied retroactively to cases on collateral review. See Price v. United States, 795 F.3d 731 (7th Cir. 2015). Eventually, with authorization from the Seventh Circuit, Vitrano filed a second or successive § 2255 petition attacking his sentence pursuant to the holding in Johnson. Without objection from the government, Judge Randa granted the § 2255 petition and, on October 28, 2015, reduced Vitrano's sentence to 120 months. (Dkt. No. 8 at 3). The BOP then recalculated his sentence, including credit for time served and good conduct, and concluded that Vitrano's first sentence was deemed satisfied as of August 11, 2011, although he had served time beyond that date.

Because his first sentence had effectively ended before his second sentence had begun, the BOP de-aggregated Vitrano's sentence pursuant to BOP Program Statement 5880.28, Sentence Computation Manual (1984). Noting that a sentence cannot begin any earlier than its date of imposition, the BOP deemed Vitrano's second sentence to have commenced on August 26, 2013, the day that Judge Adelman

5

sentenced him. (Dkt. No. 13-1 at 9). It then credited Vitrano for the additional time served between the effective completion date of his first sentence and the date on which his second sentence had commenced, August 12, 2011, to August 25, 2013, and applied that time to his second sentence. Id. Including his projected good conduct credit, the BOP recalculated Vitrano's tentative release date to be April 27, 2020, where it currently remains. Id.

## I.   Vitrano's § 2241 Petition

On November 25, 2015, Vitrano filed a petition for habeas corpus pursuant to 28 U.S.C. 2241 in this Court, seeking a correction of his sentencing calculation and immediate release from custody. (Dkt. No. 1). Contemporaneously, he filed an "emergency" motion seeking a "fast track" review of his petition, and again seeking his immediate release. (Dkt. No. 2). Shortly thereafter, on December 2, 2015, he filed a motion for bail and a motion to supplement his petition with recently discovered, new evidence (dkt. no. 4). To that motion, he attached a copy of a letter dated November 18, 2015, from Judge Adelman to Vitrano, explaining that the BOP determined issues of sentence credit and execution, not the sentencing court. (Dkt. No. 4-2).[4] Vitrano supplemented his

---

[4]The letter was originally docketed in E.D. Wis., 2:09cr140, Dkt. No. 86, and was in response to a letter from Vitrano to Judge Adelman requesting that he clarify his sentence with the BOP. See

petition with a copy of the judgment on his second conviction (dkt. no. 6), as well as copies of portions of his administrative record (dkt. no. 8).

On February 3, 2016, the respondent, Warden Jennifer Saad ("Saad"), moved to dismiss, or, in the alternative, for summary judgment, arguing that: (1) Vitrano's second sentence could not run concurrent to his first sentence because the first sentence had been satisfied before the second had been imposed; (2) Vitrano has received all of the credit for time served to which he is entitled; and (3) in any event, Vitrano has failed to exhaust his administrative remedies. (Dkt. Nos. 12 and 13). Vitrano filed a memorandum in opposition on February 18, 2016. (Dkt. No. 21).

Also on February 18, 2016, Vitrano filed a "Motion for Request for an Evidentiary Hearing in Light of New Facts." (Dkt. No. 22). Notably, although he alleged he had "factual evidence to place on the record" that would "result in the granting of his petition" and "immediate release" from incarceration, he had provided no indication whatsoever as to the nature of that evidence. (Dkt. No. 22).

## II. Magistrate Seibert's R&R and Vitrano's Objections

On June 28, 2016, Magistrate Judge Seibert filed his R&R,

_____

<u>id.</u> at dkt. no. 85.

which recommended that the Court grant the respondent's motion to dismiss, or, in the alternative, for summary judgment, and deny and dismiss with prejudice Vitrano's petition because he had failed to exhaust his administrative remedies. (Dkt. No. 25).

On July 20, 2016, Vitrano filed his objections to the R&R (dkt. no. 33), to which he attached a copy of the final denial of his Central Office Administrative Appeal Remedy (dkt. no.33-1). Specifically, Vitrano objected that the R&R failed to account for the futility of exhausting his administrative remedies. In addition, he reasserts the claim in his petition that his sentence was improperly calculated and that the BOP is now unlawfully holding him in custody beyond his term of incarceration.

## STANDARD OF REVIEW

### I.  Review of the R&R

"The Court will review de novo any portions of the magistrate judge's Report and Recommendation to which a specific objection is made . . . and the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the prisoner does not object." Dellarcirprete V Gutierrez, 479 F.Supp.2d 600, 603-04 (N.D. W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir.1983)).

Vague objections to an R&R distract a district court from

"focusing on disputed issues" and defeat the purpose of an initial screening by the magistrate judge. McPherson v. Astrue, 605 F. Supp.2d 744, 749 (S.D.W.Va. Mar. 2, 2009) (citing Howard's Yellow Cabs, Inc. v. United States, 987 F.Supp. 469, 474 (W.D.N.C. 1997)). Further, failure to raise "any specific error of the magistrate's review" waives the claimants right to a de novo review. Id. (citing Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). Likewise, "general and conclusory" objections to the magistrate's R&R do not warrant a de novo review by the District Court. Id. (citing Howard's Yellow Cabs, 987 F.Supp. at 474); see also Green v. Rubenstein, 644 F.Supp.2d 723 (S.D.W.Va. 2009).

**II.  Summary Judgment**

Captioning a motion as a motion to dismiss or, in the alternative, as a motion for summary judgment puts the parties on notice that the Court may construe the motion as either. Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 260 (4th Cir. 1998). Federal Rule of Civil Procedure 12 states that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, the Court may consider documents attached to the complaint, as well as those attached to the motion to dismiss, "so

long as they are integral to the complaint and authentic." <u>Sec'y of State for Defence v. Trimble Navigation Ltd.</u>, 484 F.3d 700, 705 (4th Cir. 2007) (citing <u>Blankenship v. Manchin</u>, 471 F.3d 523, 526 n.1 (4th Cir. 2006)). Here, the respondent has attached affidavits to her motion, and Vitrano has attached documents to his response in opposition. Because the Court considers these documents in its decision, it construes the respondent's motion as one for summary judgment.

<u>**LEGAL ANALYSIS**</u>

**I.   Failure to Exhaust**

In his objection, Vitrano repeats the same arguments he presented in his memorandum in opposition to the respondent's motion for summary judgment. Indeed, with one exception, he rehashes his arguments on the issue of exhaustion rather than point to a "specific error of the magistrate's review." <u>McPherson</u>, 605 F. Supp.2d at 749. Vitrano also contends that the denial of his Central Office Administrative Remedy Appeal, which he attached to his objections (dkt. no. 33-1), establishes that he has now exhausted his administrative remedies.

The R&R addressed Vitrano's arguments that he either was not required to exhaust due to futility, or somehow had effectively exhausted. Based on the record before him, Magistrate Seibert

10

correctly concluded that Vitrano was required to fully exhaust prior to filing his petition. See McClung v. Shearin, 90 Fed. Appx. 444 (4th Cir. 2004) (per curiam) ("Federal prisoners must exhaust their administrative remedies prior to filing §2241 petitions."); United States v. Mercado, 37 Fed. Appx. 698 (4th Cir. 2002) (dismissing for failure to exhaust); Wynne v. Warden at SFF Hazelton, 2012 WL 2522957, at *4 (N.D.W.Va. May 30, 2012) (same). Therefore, the additional documentation provided by Vitrano establishing his belated exhaustion does not undermine the reasoning of the R&R. Accordingly, finding no clear error, the Court **ADOPTS** the reasoning of the R&R, concluding that Vitrano failed to exhaust his administrative remedies prior to filing his petition.

The Court notes, however, that "exhaustion is not statutorily required for habeas corpus. Instead, exhaustion requirements in habeas corpus actions arising under § 2241 are merely judicially imposed" and "[t]herefore, the court has discretion to waive the exhaustion requirements." Wynne, 2012 WL 2522957, at *4 (citing LaRue v. Adams, 2006 WL 1674487 *8 (S.D.W.Va. June 12, 2006) (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241)).

While Vitrano clearly did not exhaust his administrative

remedies prior to filing his petition or the completion of the R&R, he did subsequently exhaust them (dkt. no. 33-1). Thus, although when filed, Vitrano's petition was subject to dismissal for failure to exhaust, at this point it would waste judicial time and resources to require him to re-file and begin this process anew. Accordingly, the Court will waive the exhaustion requirement and turn to the merits of Vitrano's petition.

## II.   Sentence Computation

Vitrano contends that the BOP misapplied his second sentence. He asserts that the 72 month concurrent portion of his second sentence could only be served concurrently with his first sentence. Therefore, in the simplest of terms, when the BOP deemed his first sentence satisfied on August 11, 2011, the concurrent portion of his second sentence necessarily also was satisfied.

Essentially, Vitrano wants the BOP to credit the 72 month concurrent portion of his sentence retroactively, deeming it satisfied before it was ever imposed. Doing so would mean that the concurrent portion of his sentence would have been satisfied on August 11, 2011, and the consecutive portion of his sentence would have run from then until approximately August 11, 2015, minus any good conduct credit. Unfortunately, Vitrano either fails to understand, or simply refuses to accept, how his sentence must be

<u>**ORDER ADOPTING REPORT AND RECOMMENDATION**</u>

applied.

Under C.F.R. § 0.96 (2010), Congress has delegated to the BOP the authority to calculate federal sentences, and courts have generally "upheld the manner in which the Bureau of Prisons computes vacated sentences as outlined in its program statement." <u>Headspeth v. Conley</u>, 126 F.Supp.2d 1004, 1007 (S.D.W.Va. 2001) (citing <u>Allen v. Crabtree</u>, 153 F.3d 1030 (9th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1091 (1999)). Pursuant to 18 U.S.C. § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." Accordingly, Vitrano's 120 month sentence began when Judge Adelman sentenced him on August 26, 2013, when he was returned to the custody of the United States Marshal Service.

Of course, pursuant to 18 U.S.C. § 3585(b), the BOP properly credited him for the additional time he served between the satisfaction of his first sentence and the imposition of his second sentence.[5] Consequently, it correctly computed Vitrano's sentence

---

[5]In his objection, Vitrano also argues that he should receive credit from the time he was detained following his indictment in 2:09cr140 in 2009. Because that time was credited against his first sentence in 2:02cr199-1, pursuant to 18 U.S.C. § 3585(b), it is not applicable to his second sentence.

in accordance with its Program Statement and the law.

Turning to Vitrano's other contentions, there is simply no legal support for the argument that his 72 month concurrent sentence should be credited retroactively to a previous sentence satisfied prior to the imposition of his second sentence. By definition, a sentence cannot be served concurrently when there is no other sentence with which to run it.

Regardless, Vitrano insists that Judge Adelman never intended that his sentence of 120 months of incarceration be served entirely as a consecutive sentence. Further, he maintains that, "had [he] been actually discharged in 2011, as the [BOP] is now calculating," Judge Adelman would not have been able to structure a sentence in part concurrent and in part consecutive.

Several factors belie Vitrano's contentions. First, the transcript from Vitrano's sentencing establishes that Judge Adelman acknowledged that, under the federal Sentencing Guidelines, Vitrano's second sentence should be consecutive. See Sentencing Transcript, E.D. Wis., 2:09cr140, dkt. no. 78 at 31. Nonetheless, after a thorough discussion of the sentencing factors, he determined that a partially concurrent sentence would be reasonable under the circumstances. Id. at 33. His reasoning for doing so, however, has since been nullified post-Johnson.

14

ORDER ADOPTING REPORT AND RECOMMENDATION

First, Judge Adelman recognized that, at that time, Vitrano was serving a 30 year sentence imposed by Judge Randa and would not be released from that sentence until he was 73 years old. Id. Next, he reasoned that, by committing the instant crimes, including filing a fraudulent § 2255 petition, Vitrano had cost himself the opportunity to succeed on what Judge Adelman perceived as "an arguably decent habeas" petition that potentially could have "saved him 20 years."[6] Id. at 22. Indeed, the court based its sentencing decision largely on its belief that Vitrano would no longer have a realistic chance of having his prior sentence reduced:

> PROSECUTOR:    But I would say this, to the extent that you're of the mind that there is merit to the challenge on the three predicates, in my view that would mitigate in favor of maximizing his punishment in this case. If you credit all of the witness statements that you have been presented with, this is an extremely dangerous man. So if he succeeds in California, and let's assume for the sake of argument that the Ninth Circuit agrees with Your Honor that these three predicates don't count --

> THE COURT:     I'm not asserting they do. I'm just saying I think it's certainly arguable.

> PROSECUTOR:    I understand that; but the point I'm

---

[6]At that time, Vitrano had filed a § 2241 habeas petition pending in the Central District of California, attacking one of his predicate offenses under Begay and Chambers. See Sentencing Transcript, E.D. Wis., 2:09cr140, dkt. no. 78 at 21.

|                | trying to make, Your Honor, is if you're right -- |
|----------------|---------------------------------------------------|
| THE COURT:     | And I also think it's extremely unlikely that he'll win in anyplace. |
| PROSECUTOR:    | But certainly from a safety-of-the-community standpoint, I have to assume that he may win in California. He may win in the Ninth Circuit in which case we're looking at an individual – |
| THE COURT:     | I think he won't. Okay. So let's take that off the board. My only issue here, and I'm not disagreeing with a lot of what you're saying, but my only issue here is this scam that he perpetrated that I had to try and that Judge Randa had to deal with and that -- essentially, he had an arguably decent habeas which would have saved him 20 years; but because he did this really awful obstructive act, he basically loses out on that, which is -- I mean, I think a fair conclusion; so, I mean -- and I'm not really -- I'm not sure where I'm going with this other than to say that if it's true that he might have won, if he hadn't had been so eager to come up with this scam, the scam has cost him 20 years besides whatever he gets here. |

. . .

|                | |
|----------------|---------------------------------------------------|
| THE COURT:     | No, I told you, I don't think he's going to get out of that 30-year sentence. I think it's -- There's no -- There's no realistic opportunity for him to get out of the 30-year sentence. So he's not going to get out of prison until he's 72 or 73. That's, I think, the only realistic assumption I can make. |
|                | I mean, if you want to postpone the sentence and wait until the habeas is |

> dismissed in the Ninth Circuit -- I mean, I don't think that's a reasonable argument to say that, oh, he might get out there. I mean, I think I have to take the facts that are before me now.
>
> . . .
>
> PROSECUTOR:     I don't think in the Seventh Circuit that's necessarily true. In any event, Judge, I think at a minimum concurrent time in this case would not satisfy 3553(a) factors. It would not -- It would undermine the seriousness of these offenses. It would also, I think, not ensure the safety of the community because I, frankly, do have to assume for the risk of -- the safety of the community, that there's a potential no matter how remote that he would prevail --
>
> THE COURT:     If I'm sentencing somebody, don't I have to -- don't I have to make a decision as to the person's status? I mean, I can't -- I can't really in good conscience sentence anybody saying, well, hey, it's -- there's some remote possibility that this person might get out at some point before I -- before I think it's going to happen; and so -- I mean, I have to decide what's going to happen and then sentence him on certain facts, right? I can't just sort of take a worse-case scenario and say --

Id. at 21-26.

In handing down the 120 month sentence, Judge Adelman reviewed the sentencing factors under 18 U.S.C. § 3553(a). As the following comments demonstrate, he relied heavily on Vitrano's perceived lost opportunity to have his sentence reduced by 20 years, as well as

the fact that he would be 73 years old upon completion of his first

sentence.

> There is another consideration in the case that I
> can't ignore, and that's the manner in which defendant's
> fraud Scotched what may well have been a good 2255
> motion.
> Defendant may have had a decent argument that his
> armed career criminal predicates; two endangering safety
> cases and an escape shouldn't count under <u>Begay</u> and
> <u>Chambers</u>. He lost the ability to pursue that argument
> which may have legitimately resulted in a reduction of
> his sentence from 30 years to 10 because of the manner in
> which he pursued this fraudulent attack.
> I'm not making any findings, and I'm not making any
> predictions about the merits of his <u>Begay</u>/<u>Chambers</u>
> challenges, but it would not be entirely accurate to say
> that only a consecutive prison sentence in this case will
> produce a consequence for the fraud.
> It's also appropriate for me to take into account
> defendant's age at the time of his projected release from
> prison on the current sentence. The Seventh Circuit has
> cautioned judges about imposing effective life terms . .
> . although such sentences can be appropriate even when
> the result of a consecutive term stacked on top of a
> lengthy existing sentence. . . .
> Here, it appears that defendant will be 73 when
> released from his current sentence. He's 57 now. And
> according to statistics from the CDC and SSA, a man of
> his age can expect to live another 25 years or so beyond
> the projected release date.
> Under all the circumstances, I find it appropriate
> to impose a partially concurrent term. This will provide
> some additional punishment for the incident offense
> conduct and some additional deterrence and protection of
> the public while also acknowledging the length of the
> undischarged term, the defendant's projected age on
> release, and the other factors I've discussed.

<u>Id.</u> at 32-33.

 On that point, Judge Adelman proceeded to review Vitrano's

extensive violent history and confirmed that the guideline range was 130 to 162 months of incarceration. Id. at 30. He then varied from that range and sentenced Vitrano to 120 months. Id. 33-34. Based on his consideration of the § 3553 factors, he further varied from the guidelines by imposing a partially concurrent sentencing. Id. at 34.

It is clear from the transcript that Judge Adelman was influenced to impose a partially concurrent sentence by the fact that Vitrano was going to be in prison for at least another sixteen years, and he would be 73 years old when released. Nonetheless, he chose to extend that lengthy sentence by another 48 months, making Vitrano 77 years old at the time of his expected release. Undoubtedly, Judge Adelman intended that Vitrano's sentence should run "consecutively to the undischarged sentence." Id. at 33.[7]

Vitrano may be correct that Judge Adelman could not have structured a partially concurrent sentence had he been released prior to imposition of his second sentence. Without doubt, however,

---

[7]See also Cook v. Winn, 472 F.Supp.2d 113 (D.Mass. Feb. 6, 2007). In Cook, the sentencing judge had stated that the defendant's sentence was to run concurrently to a sentence he was "presently serving in the District of Columbia." The defendant's sentence, however, had expired prior to the imposition of his new sentence. The court held that despite the concurrent language, the defendant was not entitled to credit for time served retroactively from his first sentence.

faced with that scenario, Judge Adelman would have imposed a stand alone 120 month sentence, which Vitrano would have begun serving on that date. There simply is no indication in the record that Judge Adelman intended to impose a stand alone sentence of 48 months under any scenario.

Further, it stretches credulity to believe that, for some reason not articulated on the record, Judge Adelman would have imposed a sentence of only 48 months had Vitrano not been serving a lengthy undischarged sentence.[8] Indeed, he had already extended a 360 month sentence to 408 months and decided it was appropriate for Vitrano to be released when he was 77 rather than 73 years old. The transcript simply does not support Vitrano's contention.

Other facts further belie Vitrano's contention that Judge Adelman intended he serve only 48 months but for the undischarged sentence. On November 10, 2015, Vitrano mailed a letter to Judge Adelman's court requesting that he  clarify his sentence with the BOP and order his immediate release from custody. E.D.Wis., 2:09cr140, dkt. no. 85. On November 19, 2015, Vitrano moved to have his judgment order in 2:09cr140 corrected to reflect only a 48 month consecutive sentence, together with a writ of mandamus

---

[8]Doing so would have meant that with credit for the time served between satisfaction of the first sentence and imposition of the second Vitrano would have been released at age 59.

seeking to compel Judge Adelman to order his immediate release. Id. dkt. nos. 87 and 88. Finally, on November 23, 2015, he filed an "emergency motion" seeking his immediate release based upon the same arguments presented here. Id.

Judge Adelman's responses to these motions provide not the slightest indication that, in his opinion, the BOP had misapplied Vitrano's sentence, or that Vitrano somehow was being incarcerated beyond the time intended. In response to Vitrano's letter, Judge Adelman summarily informed him that "[t]he Bureau of Prisons, not the sentencing court, determines issues of sentence credit and execution." Id. dkt. no. 86. Moreover, on December 3, 2015, he denied Vitrano's other motions, explaining once again:  "As I indicated by my November 18, 2015 letter, a prisoner wishing to challenge the BOP's computation or execution of a federal sentence may do so via a petition for a writ of habeas corpus under 28 U.S.C. § 2241, in the district of his confinement following exhaustion of available administrative remedies." Id. dkt. no. 90 at 5.[9] Nowhere does Judge Adelman suggest that Vitrano's sentence is being carried out contrary to his intent.

At bottom, Judge Adelman sentenced Vitrano to 120 months.

---

[9] In addition, Vitrano sent another letter to Judge Adelman on December 14, 2015, again asking him to speak with the BOP to clarify the sentence. That letter remains unanswered.

Ultimately, the 72-month concurrent portion of that sentence could not be served because at that point Vitrano was no longer serving another sentence. Moreover, the 48-month consecutive portion could not be served because the prior sentence had expired. Therefore, Judge Adelman's sentence was effectively a 120-month stand alone sentence, which the BOP has correctly applied. Vitrano is not entitled to a windfall sentence reduction solely because, as a result of a change in the law, his earlier sentence ended before his second sentence had begun.

## CONCLUSION

For the reasons discussed, the Court **ADOPTS** the reasoning in the R&R (dkt. no. 25), finding that Vitrano failed to exhaust his administrative remedies prior to filing suit, and **OVERRULES** his objections. In addition, the Court **GRANTS in PART** Vitrano's motion to supplement his petition with newly discovered evidence (dkt. no. 4). It further concludes that the BOP correctly applied Vitrano's sentence pursuant to its Program Statement and the law. Accordingly, it **GRANTS** respondent's motion for summary judgment (dkt. no. 12), **DENIES** Vitrano's petition (dkt. no. 1), and **DISMISSES** the case **WITH PREJUDICE**. Finally, the Court **DENIES as MOOT** Vitrano's emergency motion for release (dkt. no. 2), his motion for bail (dkt. no. 4), and his motion for an evidentiary

hearing (dkt. no. 22).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and the <u>pro</u> <u>se</u> petitioner, return receipt requested, to enter a separate judgment order.

DATED: August 31, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE